UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-61818-CIV-COHN/SELTZER

MARIA DANGER,

    Plaintiff,

vs.

WACHOVIA CORP.; WACHOVIA
SECURITIES, LLC; WACHOVIA
SECURITIES FINANCIAL NETWORK,
LLC; WACHOVIA SHARED
RESOURCES, LLC; and
WACHOVIA BANK, N.A.,

    Defendants.
_____/

## ORDER ON MOTION TO COMPEL DISCOVERY

THIS CAUSE is before the Court on Plaintiff's Motion to Compel Discovery (DE 30) and the Court being sufficiently advised, it is hereby ORDERED that the Motion is GRANTED in part and DENIED in part for the reasons set forth below.

On Thursday, February 10, 2011, Plaintiff served on Defendants Interrogatories, a Request for Production of Documents, and a Request for Admissions by express mail through the United States Postal Service.  On Thursday, March 17, 2011, Defendants responsed and objected to each discovery request as untimely under the Federal Rules of Civil Procedure and this District's Local Rules.

Local Rule 26.1(f)(2) provides that "[d]iscovery must be completed in accordance with the court-ordered discovery cutoff date."  At the time Plaintiff served the discovery

requests, the discovery cut-off date was Tuesday March 15, 2011.[1]  Local Rule 26.1(f)(2) additionally provides that "[w]ritten discovery requests . . . must be served in sufficient time that the response is due on or before the discovery cutoff date" and failure to do so "obviates the need to respond or object to the discovery . . . or move for a protective order." Under Federal Rules of Civil Procedure 33(b)(2) (interrogatories), 34(b)(2)(1) (requests for production), and 36(a)(3) (requests for admissions), a party must respond to the written discovery requests within 30 days after being served therewith.

Here, the parties agree that under the method for computing time set forth in Federal Rule of Civil Procedure 6(a), the 30-day period for serving Defendants' responses to the discovery requests ended Monday, March 14, 2011 – one day before the discovery deadline.[2]  Under Rule 6(d), however, that 30-day period is extended by 3 days where service is made by hand delivery.[3]  The parties disagree whether the 3 days should be added to Defendants' response time.  Defendants contend that Plaintiff served the requests by mail and, therefore, three days must be added to the response period, making Defendants' responses due on March 17, 2011 – two days after the discovery deadline.

---

[1] On March 23, 2011, the District Court extended the discovery deadline to April 5, 2011.

[2] Thirty days following the February 10, 2011 service date was March 12, 2011. Because March 12 was a Saturday, under Rule 6(a)(1)(C), Monday, March 14, 2011 was the ending date for the 30-day period.

[3] But under Rule 6(d), the 30-day period for service of discovery requests is not extended by 3 days where service is made by leaving them "at the person's office with a clerk or other person in charge or if no one is in charge, in a conspicuous place in the office," Rule 5(b)(2)(B)(i), or "if the person has no office or the office is closed, [by leaving the requests] at the person's dwelling or usual place of abode with someone of suitable age and discretion that resides there." Fed. R. Civ. P. 5(b)(2)(B)(ii).  Neither of these methods of service are at issue here.

According to Defendants, because Plaintiff failed to serve her discovery requests in sufficient time for them to respond before the March 15 discovery deadline, the requests were untimely under Local Rule 26.1(f)(2).  By contrast, Plaintiff contends that the 3 days (for mailing) should not be added to Defendants' 30-day response period because she served her discovery requests by "express/ overnight/guaranteed next day mail, and not regular 'snail mail.'"  Motion at 4 (DE 30).  Plaintiff argues that such service should be deemed hand delivery.

In support of her argument, Plaintiff relies solely on Manguson v. Video Yesterday, 85 F.3d 1424 (9th Cir. 1996).  In Manguson, one issue before the court was whether the defendant's service via Federal Express of a Rule 68 offer of judgment was defective under Rule 5(b), thereby precluding an award of attorney's fees or costs to the defendant.  The Ninth Circuit ruled that the district court had erred in holding that service of the offer by the private carrier was adequate because the plaintiff had received notice of the offer.  In so ruling, the Manguson Court first noted:

> Under the Federal Rules of Civil Procedure, manner of service of process is addressed in both Rule 4 and Rule 5.  Rule 4 addresses the procedure to be followed when serving a complaint.  Rule 5 specifies the procedure to be followed when serving other papers, including offers of judgments.  Both rules contain provisions for service by mail. . . . The service-by-mail provisions of Rule 4 are a relatively recent innovation, adopted in a 1983 amendment.  In contrast, Rule 5 has permitted service by mail since its adoption, in 1937.

Id. at 1430.

The court then reasoned that modern private overnight delivery service did not exist when Rule 5 was adopted.  Hence, the requirement of "mailing" in the various federal procedure rules was intended to refer to the Government's postal service, and its meaning

3

should be consistently construed under all the Federal Rules. In reaching its decision that Federal Express was not "mail" within the meaning of Rule 5(b), the Manguson Court stated:

> If there is any question of whether the term "mail" encompasses private delivery services today, there is little doubt that "mail" meant "U.S. mail" in 1937, when Rule 5 was adopted. The suggestion that in failing to specify that mail must be "first class, postage prepaid" Rule 5 was intended to authorize service by private delivery in an era that predates modern overnight delivery service makes little sense. . . .
>
> Nor, on a practical level, does it make sense to adopt an approach that interprets the term "mail" differently for the purposes of different rules within the Federal Rules of Civil Procedure. If we were to hold that Federal Express is "mail" for the purposes of Rule 5 (even though it is not for Rule 4), we would then have to address whether Federal Express is "mail" under Rule 6(e), which adds three days to computations of time where service is by mail. Given that Federal Express is generally used for overnight delivery, one could argue that Congress did not intend that Rule 6(e) apply to service by Federal Express, i.e., that Federal Express is *not* mail under Rule 6. It seems clear that in interpreting the term 'mail differently for the purposes of different rules within the Federal Rules of Civil Procedure, courts are likely to cause great confusion. Thus, we hold that Federal Express does not satisfy the [mailing] requirements of Rule 5(b).

Id. at 1430-31 (emphasis added); but see United States v. 63-29 Trimble Rd., 812 F. Supp. 332, 334 (E.D.N.Y 1992) ("Rule 5(b) does not require mailing through the United States Postal Service"; service by Federal Express is valid).

Relying on the Manguson Court's ruling that service by Federal Express does not meet Rule 5(b)'s mailing requirement, Plaintiff here urges the Court to deem the express mail delivery by the United States Postal Service as analogous to delivery by Federal Express. Plaintiff argues that if the Postal Service's express, guaranteed overnight delivery

4

is equivalent to hand delivery, then the three days (for mailing) should not be added to Defendants' response time and, hence, the service of her discovery requests would be timely. The Court rejects Plaintiff's arguments.

First, the Manguson Court ruled that service by Federal Express was not valid service by mail under Rule 5(b); it did not address whether such service is considered hand delivery under the Federal Rules. Additionally, the Manguson decision was based (at least in part) on the fact that service of papers by a private delivery service, such as Federal Express, is not "mailing" through a governmental entity (i.e., the United States Postal Service). Here, unquestionably Plaintiff did mail her written discovery requests via the United States Postal Service; it would not be reasonable to conclude that sending papers through the United States Postal Service, even by express mail, is not "mailing" within the meaning of Rule 5(b). Further, it is delivering an item into the hands of a recipient that distinguishes "hand delivery" from other forms of service. The record here does not show that the United States Postal Service was required to or actually does hand deliver the express mail parcel to the recipient. Moreover, Plaintiff's contention – "It makes sense that three days mail time should not be added because since the discovery was sent via guaranteed overnight mail, there is no uncertainty when it arrived," Motion at 4 (DE 30) – is factually incorrect. According to Defendants, the purportedly "guaranteed" overnight delivery[4] of the discovery requests (served by Plaintiff on Thursday, February 10) was not delivered to them the next day (Friday, February 11); rather, Defendants' counsel received the discovery requests on (Monday) February 14 in the firm's regular United States

---

[4] According to Defendants, "United States Express Mail only guarantees delivery in 1-2 days." Opposition Memorandum at 5 n.7 (DE 35). Defendants, however, have not provided any support for this statement.

5

mailbox.[5]   Accordingly, Plaintiff's discovery requests were unquestionably "mailed" (not hand delivered) and, therefore, pursuant to Rule 6(d), three days must be added to Defendants' response period, rendering Plaintiff's service untimely.[6]

Plaintiff, however, alternatively seeks "either a finding of excusable neglect under Fed. R. Civ. P. 6(b) (the customary practice of plaintiff's attorneys office of using USPS overnight mail, which it should have been sent by Federal Express or hand delivered . . .)" or "a finding that the defendants were served 33 days prior to the deadline, and were not prejudiced – especially when one considers the additional time period granted in the Court's extension of the discovery deadline." Reply at 3 (DE 36). Plaintiff argues that she "is not attempting to re-write the Rules of Civil Procedure, but is urging the court to consider the circumstances and the lack of prejudice to the defendants that would result in defendants being compelled to answer." Id.

---

[5] Defendants state that it is possible that the discovery requests were delivered to the firm's mailbox on Saturday, February 12, 2011. They argue that even if so, placing the discovery requests in the firm's mailbox during non-working hours, two days after they were mailed, constitutes neither hand delivery nor overnight mail. The Express Mail envelope in which Plaintiff's discovery requests were sent had written across it (probably by the Postal Service) "NO DECAL FOR SCAN." This could account for the delay in delivery and made it impossible to track the exact date on which it was sent and received. Significantly, in her Reply (DE 36), Plaintiff acknowledges that she is unable to show when Defendants' counsel received the discovery requests.

[6] Plaintiff additionally contends that the District Court's Order extending the discovery deadline (entered on March 23, 2011 – 8 days after the original discovery deadline) renders Defendants' untimely objections moot. Defendants argue that under Local Rule 26.1(f)(2), Plaintiffs failure to timely serve her discovery requests rendered them null and void and no response was even required. According to Defendants, "[w]hen the Court issued its Order on March 23, 2011, re-opening discovery for an additional 13 days did not change the fact that Plaintiff's written discovery had been null and void for almost 40 days." Opposition Memorandum at 7 (DE 35). This Court agrees with Defendants that Plaintiff's discovery requests, which were untimely as of the close of discovery, were not resurrected on March 23, when the District Court reopened discovery from that date until April 5, 2011.

Under Rule 6(b) (with certain exceptions not applicable here), "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."  Fed. R. Civ. P. 6(b)(1)(B).  The Supreme Court has concluded that the determination of excusable neglect is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."  Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993).[7]  The factors for a court to consider include "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reasons for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."  Id.  "The test derives from Congress' contemplation that 'the courts would be permitted, where appropriate, to accept late filings cause by inadvertence, mistake, carelessness, as well as intervening circumstances beyond the party's control.'"  Maberry v. Said, No. 94-2416-JWL, 1996 WL 442046, at *2 (D. Kan. July 3, 1996) (finding that the plaintiff's neglect in filing attorney's fee motion one day late was excusable under Rule 6(b)) (quoting Pioneer, 507 U.S. at 388).

Defendants argues that Rule 6(b) is not applicable here.  According to Defendants, "Rule 6(b) . . . applies to requests by a party (made in good faith) for an extension of a time

---

[7] In Pioneer, the Supreme Court considered "excusable neglect" in the context of Federal Rule of Bankruptcy Procedure 9006(b).  The same standard, however, applies when evaluating "excusable neglect" within the meaning of Rule 6(b). See e.g., Lewis v. Sch. Dist., 523 F.3d 730 (7th Cir. 2008) (evaluating late filing of answer under Rule 6(b)); Stronach v. Virgina State Univ., 577 F. Supp. 2d 788 (E.D. Va. 2008) (evaluating late filing of attorney's fee motion under Rule 6(b)); Maberry v. Said, No. 94-2416-JWL, 1996 WL 442046, at *2  (D. Kan. July 3, 1996) (evaluating late filing of attorney's fee motion under Rule 6(b)).

7

period within which they must act. As such it is of little significance under the facts of the instant Motion in which the Plaintiff seeks to make the Defendants act." Opposition Memorandum at 7 (DE 35). Even though Defendants may be technically correct, the Court nonetheless possesses broad discretion to determine how best to manage a case, including discovery and scheduling matters. Chrysler Int'l Corp. v. Chemaly, 280 F.3d 1358, 1360 (11th Cir. 2002); Johnson v. Bd. of Regents of Univ. of Ga., 263 F.3d 1234, 1268 (11th Cir. 2001). In exercising this discretion, the Court finds that the factors to consider when determining excusable neglect are helpful.

Here, with respect to the first Pioneer factor, Defendants have failed to identify any prejudice that would result from having to respond to Plaintiff's written discovery requests, and the Court does not find any such prejudice. Indeed, Plaintiff would be prejudiced in the prosecution of her case if she were not permitted to obtain any written discovery. The second Pioneer factor – "the length of the delay and its potential impact on judicial proceedings" – also weighs in Plaintiff's favor. The two-day delay in the service of her discovery requests was minimal; therefore, requiring Defendants to respond to the requests should have little, if any, impact on these proceedings. The third Pioneer factor – "the reasons for the delay, including whether it was within the reasonable control of the movant" – however, is a closer question. No doubt exists that Plaintiff's timing in serving her discovery requests was in her control.[8] Plaintiff, however, contends that her service

---

[8] Plaintiff states that "[i]n over twenty years of practice, plaintiff's attorney's office has never had a problem with serving untimely requests." Motion at 5 (DE 30). According to Plaintiff, "if serving by regular mail, the office always allows for at least 33 days time before any deadline so that the other party can respond, and if serving by overnight mail, the office always sends out discovery thirty days in advance . . . ." Id. (emphasis added). Based on this statement, Defendants believe that Plaintiff has characterized her excusable neglect argument as a strategic decision consistent with years of practice. Opposition

8

was "in no way due to a lack of attention or consideration of the rules, procedure, or due diligence." Motion at 6 (DE 30). Rather, she thought that her requests were timely served, based on her belief that express mail was "hand delivery" because of the Magnuson decision. Additionally, Plaintiff notes that her counsel acted in good faith when she served her discovery requests 33 days in advance of the discovery deadline, particularly when counsel believed the relevant response period was 30 days. The Court finds that Plaintiff did make a good faith effort to serve her discovery requests in time for Defendants to respond prior to the discovery deadline. The Court, therefore, will excuse Plaintiff's untimely service of her discovery requests and will require Defendants to respond thereto. See Bishop v. Potter, No. 2:08-cv-00726-RHL-GWF, 2010 U.S. Dist. LEXIS 85701, at *4 (D. Nev. July 14, 2010) (court required the defendant to respond to discovery requests served by plaintiff 31 and 32 days before the discovery deadline, stating "[w]hile discovery requests should generally be served at least 33 days prior to the close of discovery, this requirement is not absolute. The Court can excuse the failure to comply with the deadline, if it is not excessive.").

Finally, in addition to asserting untimeliness objections to Plaintiff's discovery requests, Defendants objected to certain interrogatories and requests for production as vague and ambiguous or overbroad. Plaintiff, in essence, requests the Court to overrule these objections because they are merely conclusory; Defendants did not state their

---

Memorandum at 8 (DE 35). The Court, however, disagrees that Plaintiff is arguing that her delay in service was a strategic decision. The Court trusts that Plaintiff's statement was meant to convey that the 33 and 30 days before a deadline are the latest that counsel serves discovery requests, not the earliest. Moreover, the Court cannot ascertain any "strategic" or tactical advantage Plaintiff would gain by delaying until the end of the discovery period Defendants' responses to her own discovery requests.

9

grounds "with specificity" as Federal Rule of Civil Procedure 33 and 34 and Local Rule 26.1(G)(3) require. Defendants have not addressed these objections or Plaintiff's argument in their Opposition Memorandum. The Court, nonetheless, has examined the discovery requests at issue and does not find them vague, ambiguous, or overbroad. Accordingly, Defendants objections on these grounds to Interrogatories 1, 3, 5, 6, 11, and 15 and Requests for Production 8, 13, 18, and 19 are overruled.

Based on the foregoing, it is hereby ORDERED that on or before May 18, 2011, Defendants shall respond to Plaintiff's Interrogatories, Request for Production, and Request for Admissions.

DONE AND ORDERED in Fort Lauderdale, Florida, this 6th day of May 2011.

BARRY S. SELTZER
United States Magistrate Judge

Copies to:

All counsel of record